UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Fairade Frederick Dorsey,

        Petitioner,

v.

Ms. D. Wilson,

        Respondent.

Civil No. 14-4803 (SRN/SER)

**REPORT AND RECOMMENDATION**

---

Fairade Frederick Dorsey, *Pro Se*, No. 42418177 C, FCI Sandstone, P.O. Box 1000, Sandstone, Minnesota 55072.

Ana H. Voss, D. Gerald Wilhelm, and Pamela Marentette, Esqs., United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Petitioner Fairade Frederick Dorsey's ("Dorsey") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") [Doc. No. 1] and Respondent D. Wilson's ("Warden Wilson") Motion to Dismiss [Doc. No. 8]. This matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends granting the Motion to Dismiss.

I.   **BACKGROUND**

Dorsey is currently an inmate at the Federal Correctional Institute–Sandstone ("FCI–Sandstone"). (Decl. of Julie Groteboer, "Groteboer Decl.") [Doc. No. 10 ¶ 3]. The Honorable John H. McBryde, United States District Court for the Northern District of Texas, imposed a sentence of 120 months of imprisonment, followed by three years of supervised release, for his

conviction of "Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1)." (*Id.*). His projected release date, taking into consideration his good conduct time ("GCT"), was July 31, 2019, at the time Warden Wilson filed her Motion to Dismiss. (*Id.*). Dorsey's updated projected release date is now July 19, 2019. (Decl. of Julie Groteboer, "Suppl. Groteboer Decl.") [Doc. No. 13 ¶ 5].

Dorsey was an inmate at Federal Correctional Institution–Big Spring, Texas ("FCI–Big Spring") on March 13, 2014, when, following an investigation, he was charged with stalking another person in violation of Code 255. (Groteboer Decl. ¶¶ 3, 4). Lieutenant Schmidt delivered a copy of the incident report to Dorsey and read it to him. (*Id.* ¶ 5). The incident was referred to the Unit Discipline Committee ("UDC"), which held a hearing on March 15, 2014. (*Id.* ¶¶ 5–6). Dorsey denied the charge, and because of its severity, the matter was referred to the Disciplinary Hearing Officer ("DHO"). (*Id.* ¶ 6). On March 21, 2014, Dorsey appeared before the DHO, and denied the stalking charge. (*Id.* ¶ 7). The DHO found that Dorsey did not commit stalking, but did refuse to obey an order in violation of Code 307. (*Id.*). The DHO imposed the following sanction on Dorsey: "disallowance of 14 days of GCT, 60 days disciplinary segregation, and 180 days loss of commissary, visiting, telephone, and email privileges." (*Id.* ¶ 8).

Dorsey filed his Petition on November 7, 2014, pursuant to 28 U.S.C. § 2241. *See* (Pet.). In his Petition, Dorsey alleges three grounds for relief: (1) the DHO violated his due process rights when he lost 14 days of GCT as the result of the DHO sanctions at FCI–Big Spring; (2) his Fourteenth Amendment equal protection rights were violated when staff members "falsely accused [him] of exhibiting aggressive or intimidating behavior towards females, made [him] a C.I.M. assignment[,] and requested a close supervision transfer"; and (3) his First Amendment rights were violated when he was transferred to FCI–Sandstone, a so-called "less agreeable

prison," in retaliation for "fil[ing] grievances against prison officials." (Pet. at 3–4).[1] The Court ordered Warden Wilson to answer Dorsey's Petition by December 30, 2014, and notified Dorsey that any reply to Warden Wilson's answer must be filed thirty days after the answer is filed. (Order Dated Dec. 8, 2014) [Doc. No. 3].

The Court granted Warden Wilson additional time to respond to the petition to conduct a factual investigation. (Text Only Entry: Order Dated Jan. 5, 2015) [Doc. No. 7]. The Bureau of Prisons ("BOP") rewrote the incident report relating to the Code 307 violation (refusing to obey an order), changed the incident status to "pending," and provided the rewritten incident report to Dorsey on January 12, 2015. (Groteboer Decl. ¶¶ 9–10). Dorsey appeared before the UDC on January 14, 2015, where he was advised of his rights and of the rehearing. (*Id.* ¶ 11). Dorsey denied the charge, but the UDC found that he had committed the violation. (*Id.*). Dorsey "was sanctioned to 180 days loss of commissary, visiting, telephone, and email privileges," and the UDC noted that these sanctions had already been completed. (*Id.*). Dorsey was notified of the UDC's findings and advised that he had the right to appeal within twenty calendar days. (*Id.*). The BOP removed the sanctions of disallowance of fourteen days of GTC and sixty days of disciplinary segregation from Dorsey's disciplinary record. (*Id.* ¶ 12).

Warden Wilson filed her Motion to Dismiss on January 15, 2015. (Mot. to Dismiss). Warden Wilson argues that because the BOP restored Dorsey's GCT and took other remedial administrative measures, the first ground of Dorsey's Petition is moot. (Mem. in Supp. of Resp't's Mot. to Dismiss 28 U.S.C. § 2241 Pet., "Resp't's Mem. in Supp.") [Doc. No. 9 at 5–6]. Warden Wilson also argues the remaining grounds should be dismissed because they "do not

---

[1] In his accompanying memorandum, Dorsey explains that he was scheduled to be transferred to the Federal Correctional Institution in Seagoville, Texas ("FCI–Seagoville"), which is close to his children. (Mem. of Details, "Dorsey's Mem. in Supp.") [Doc. No. 2 at 3]. His transfer was cancelled, and he was instead transferred to FCI–Sandstone. (*Id.* at 3–4).

3

bear on the legality or duration of Dorsey's confinement[,]" as required by § 2241. (*Id.* at 6–7). Finally, Warden Wilson argues that an evidentiary hearing is not necessary because the relevant facts are not disputed. (*Id.* at 7). Warden Wilson submitted a supplemental declaration on February 3, 2015, stating that the restoration of Dorsey's GCT is now reflected in Dorsey's records. (Suppl. Groteboer Decl. ¶ 5).

Dorsey did not file any response to Warden Wilson's Motion to Dismiss.

## II.     DISCUSSION

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). But writs of habeas corpus "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* § 2241(c)(3).

### A.     Ground One: Loss of GCT

In Ground One of his Petition, Dorsey argues that removal of fourteen days of GCT violated his due process rights because he was not given advanced notice that the violation was changed from stalking to failure to obey an order. (Dorsey's Mem. in Supp. at 1). He also argues he did not have an opportunity to call witnesses, to present evidence, or to be heard by a fair and impartial hearing officer. (*Id.*); *see also* (*id.* at 6) (arguing that the DHO "was not permitted to amend the . . . stalking charge to a 307, disobeying a staff [member] without completely starting the process over."). Dorsey asks the Court to find him "not guilty" of the Code 307 violation and to restore his GCT. (*Id.* at 8).

A challenge regarding GCT is appropriate under 28 U.S.C. § 2241. *Goshay v. Fondren*, Civ. No. 08-5365 (PAM/SRN), 2009 WL 490015, at *4 (D. Minn. Feb. 26, 2009) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)). Federal courts, however, may only adjudicate an

ongoing case or controversy. *See Ams. United for Separation of Church & State v. Prison Fellowship Ministries*, 509 F.3d 406, 420–21 (8th Cir. 2007).

Here, Dorsey's Petition focuses on restoration of his GCT. (Pet. at 3); (Dorsey's Mem. in Supp.). His GCT has been restored since he filed this Petition, and his new release date is now July 19, 2019, instead of July 31, 2019. (Groteboer Decl. ¶ 3); (Groteboer Suppl. Decl. ¶ 5). Additionally, Dorsey was given a new incident report to reflect the Code 307 violation, advised of his rights, and provided a new hearing.[2] (Groteboer Decl. ¶¶ 10–11); *cf.* (Dorsey's Mem. in Supp. at 1). The issues raised in Ground One of Dorsey's Petition are now moot, and the Court recommends granting Warden Wilson's Motion to Dismiss with respect to Ground One, and dismissing Ground One of Dorsey's Petition.[3] *Jones v. Fed. Bureau of Prisons*, Civ. No. 09-1074 (MJD/RLE), 2010 WL 3118679, at *5 (D. Minn. Feb. 8, 2010) (finding no controversy where petitioner alleged due process violation related to disciplinary incident and BOP had restored GCT and given petitioner a new hearing), *report and recommendation adopted by* 2010 WL 3118664 (Aug. 4, 2010).

---

[2] As a result of the UDC finding that Dorsey committed a Code 307 violation, the UDC imposed sanctions that had already been completed: 180 days loss of commissary, visiting, telephone, and email privileges. (Groteboer Decl. ¶ 11). Dorsey did not challenge these sanctions in his Petition, and therefore, the Court does not address them. *See generally* (Pet.); (Dorsey's Mem. in Supp.).

[3] To the extent Dorsey seeks an Order from the Court that he is "not guilty" of the Code 307 violation, Dorsey addresses his arguments only to due process violations, and not to the propriety of the finding that that he violated Code 307. *See* (Dorsey's Mem. in Supp.); *see also Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (requiring "a modicum of evidence to support a decision to revoke good time credits"). Because he BOP essentially re-started the administrative process for the Code 307 violation after Dorsey filed this Petition, the procedures regarding the Code 307 violation are not further discussed in this Report and Recommendation.

B.     **Remaining Claims**

Dorsey's remaining claims challenge his change in custody classification to "close supervision," his security classification as a central inmate monitoring ("CIM") case, and his transfer to FCI–Sandstone instead of to a lower security facility. (Pet. at 3–4); (Dorsey's Mem. in Supp. at 1, 3–5, 7–8).

A habeas petition under § 2241 can only challenge the fact or duration of confinement. *See, e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). Challenges to the conditions of confinement cannot be addressed in a habeas proceeding. *Mendez v. United States*, Civil No. 12-28 (ADM/FLN), 2012 WL 1110138, at *2–3 (D. Minn. Jan. 24, 2012), *report and recommendation adopted by* 2012 WL 1110125 (Apr. 3, 2012).

1.     **Ground Two: Custody Classification**

A challenge to custody classification challenges the conditions of confinement, not the fact or duration of confinement. *Aldaco v. Fisher*, Civ. No. 09-3287 (JMR/RLE), 2010 WL 1131438, at *1 (D. Minn. Mar. 3, 2010), *report and recommendation adopted by* 2010 WL 1131437 (Mar. 19, 2010). To the extent Dorsey challenges his custody classification as "close supervision," the Court cannot address that claim in a habeas proceeding. *See Rios v. Fisher*, Civil No. 10-3313 (PJS/FLN), 2011 WL 3610455, at *1 n.1 (D. Minn. May 24, 2011) (stating that grounds relating to petitioner's custody classification "affect the condition, rather than the duration of [petitioner's] confinement," and therefore, "they are not proper forms of relief pursuant to a petition for habeas corpus"), *report and recommendation adopted by* 2011 WL 3607149 (Aug. 15, 2011).

### 2. Ground Two: Security Classification

Dorsey's classification as a CIM case and his subsequent transfer to FCI–Sandstone appear to be based on his relationship with female staff members at FCI–Big Spring. *See* (Dorsey's Mem. in Supp. at 4) ("On the transfer request, Mr. Roman cited the CIM assignment as 'female staff members would feel threatened if I was to be returned to the Big Spring general population.'"). This designation is made under the separation category of CIM assignments. (Request for Transfer/Application of Mgmt. Variable Dated Apr. 10, 2014, Ex. 11, Attached to Dorsey's Mem. in Supp.); *see also* 28 C.F.R. § 524.72(f). The separation assignment is for

> [i]nmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future. Factors to consider in classifying an individual to this assignment include, but are not limited to, testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution.

§ 524.72(f). Dorsey's CIM assignment does not change the fact or duration of his confinement. Therefore, the Court concludes that Dorsey's assignment as a CIM case is a security classification. This is especially true where the resulting action Dorsey complains of—transfer to FCI–Sandstone instead of to the lower-security facility FCI–Seagoville—involves a security classification. (Dorsey's Mem. in Supp. at 7); *see Davis v. Fisher*, No. 13-CV-1024 (PJS/SER), 2013 WL 3974520, at *1 (D. Minn. Aug. 1, 2013) (stating that the allegation that petitioner should be "confined in a low-security facility instead of a minimum-security facility" must be pursued through a civil rights action rather than a habeas action under § 2241) (citing *Stanko v.*

*Quay*, 356 F. App'x 208, 208–10 (10th Cir. 2009)).[4] Thus, the Court cannot address Dorsey's challenge to his designation as a CIM case and subsequent transfer to FCI–Sandstone in his habeas petition.

### 3. Ground Three: Retaliatory Transfer

Dorsey also argues that his transfer to FCI–Sandstone constitutes a violation of his First Amendment rights because it was done in retaliation for filing grievances against prison officials. (Pet. at 4); (Dorsey's Mem. in Supp. at 1). This constitutional claim likewise does not challenge the fact or duration of confinement, and therefore cannot be reviewed under the instant habeas Petition. Instead, this claim must be presented in a civil rights action as described in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Hazen*, 16 F.3d at 925 (stating that "it is impermissible to transfer an inmate in retaliation for the exercise of a constitutional right").

### 4. Evidentiary Hearing

Although Dorsey does not appear to request it, Warden Wilson argues an evidentiary hearing is not necessary. (Resp't's Mem. in Supp. at 7–8). The Court finds the record sufficient for its determination, and an evidentiary hearing is unnecessary. *See Shelton v. Ciccone*, 578 F.2d 1241, 1245 (8th Cir. 1978) (stating that a court must grant an evidentiary hearing "[w]hen the facts alleged in a habeas petition would justify relief if true, or when a factual dispute arises as to whether or not a constitutional right is being denied").

---

[4] Generally, prison authorities have broad discretion to transfer a prisoner to any particular prison. *Hazen v. Reagen*, 16 F.3d 921, 926 (8th Cir. 1994) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).

### C. Leave to Refile

As stated above, Dorsey's retaliation claim must be presented in a civil rights action. Additionally, his claims regarding conditions of confinement may be addressed in a civil rights action. *Davis*, 2013 WL 3974520, at *1; *see also* (Pet. at 3) (alleging custody and security classifications violate Dorsey's "14th amendment rights by denying [him] equal protection"); (Dorsey's Mem. in Supp. at 1) (same). Recently, the Eighth Circuit requested district courts consider whether it would be appropriate to recharacterize habeas petitions that challenge conditions of confinement "into the correct procedural vehicle for the claim[s] asserted." *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014). In *Spencer*, the Eight Circuit stated that the petition raised potential Eighth Amendment violations, and "the district court should have treated this case as a *Bivens* action as opposed to dismissing the petition without prejudice." *Id.* The Eight Circuit stated that because it is "appropriate to consider the potential detriment to habeas petitioners if district courts, *sua sponte*, transformed their habeas petitions into *Bivens* or § 1983 claims, and vice versa[,]" district courts should first obtain the petitioner's consent prior to converting his or her claims. *Id.*

Thus, the Court follows a recent example in this District, and recommends that Dorsey be provided an opportunity to "file an amended pleading, styled as a *Bivens* civil rights complaint, identifying any such claims and parties, within 30 days" of the date of any order adopting this Report and Recommendation. *Ferch v. Jett*, Civil No. 14-CV-1961 (SRN/TNL), 2015 WL 251766, at *5 (D. Minn. Jan. 20, 2015). In giving Dorsey this opportunity, the Court expresses no opinion as to the merits of any of Dorsey's potential civil rights claims.

The Court notes that a filing fee is required to initiate a civil rights action, and Dorsey may apply for *in forma pauperis* status under the Prison Litigation Reform Act of 1995 if he chooses to file an amended pleading. *See* 28 U.S.C. § 1915(b).

## III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. Respondent Ms. D. Wilson's Motion to Dismiss [Doc. No. 8] be **GRANTED**; and

2. Fairade Frederick Dorsey's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **DISMISSED** with respect to Ground One, his challenge to his loss of good conduct time; and

3. With respect to the conditions-of-confinement claims and First Amendment claim (Grounds Two and Three), Dorsey be permitted to file an amended pleading, styled as a *Bivens* civil rights complaint, within 30 days of any order adopting this Report and Recommendation. If Dorsey fails to take such action within 30 days of any order adopting this Report and Recommendation, the Court recommends Dorsey's remaining claims be dismissed without prejudice.

Dated: June 11, 2015

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.